THE PEOPLE, RESPONDENT, v. ACHA, APPELLANT.

APPEAL from the District Court of San Juan, Section 2.

No. 506.—Decided May 7, 1913.

PHYSICIANS—PRACTICE OF MEDICINE—SALE OF OXYDONOR APPARATUS.—The mere advertising and selling of the Oxydonor apparatus by a person who is not a physician does not in itself constitute a violation of the Act of March 12, 1903, regulating the practice of medicine.

ID.—PRACTICE OF MEDICINE—SALE OF OXYDONOR APPARATUS.—In order that the advertising and sale of the Oxydonor apparatus by a person who is not a physician may constitute an infraction of the Act of March 12, 1903, regulating the practice of medicine, it is necessary to prove the following elements: That the accused recommended, prescribed or directed for the use of some person the Oxydonor apparatus for the cure, relief or palliation of some ailment or disease of the mind or body, and further that he did so after having received, or with the intent of receiving, either directly or indirectly, some bonus, gift or compensation.

The facts are stated in the opinion.

Mr Charles E. Foote, fiscal, for The People.

Messrs. López Landrón, Rincón and Francis for appellant.

MR. JUSTICE ALDREY delivered the opinion of the court.

The act providing for the organization of a board of medical examiners, approved March 12, 1903, and appearing on page 120 of the statutes of that year, provides that every person wishing to practice medicine or surgery, or any of the branches thereof, or midwifery, in this Island, shall obtain from the board created by said act a certificate or license by means of certain formalities. Section 7 provides that any person shall be regarded as practising medicine within the meaning of the act who, among other things, shall recommend, prescribe, or direct for the use of any person, any drug, medicine, appliance, apparatus or other agency, whether material or not material, for the cure, relief, or palliation of any ailment or disease of the mind or body or for the cure or relief of any wound, fracture, or bodily injury, or other deformity, after having received or with the intent of receiving there-

for, either directly or indirectly, any bonus, gift, or compensation. ⸗

The appellant, Eduardo Acha, was charged before the District Court of San Juan, Section 2, with having violated the said statute in that between November, 1911, and June, 1912, he unlawfully and wilfully and without being authorized by law to practise medicine in this Island recommended, prescribed, and sold an apparatus called Oxydonor for the cure of bodily diseases with the intent of receiving a pecuniary compensation therefor. He was found guilty and sentenced to pay a fine of $100 and the costs or, in default thereof, to imprisonment, and from that judgment he took the present appeal.

One of the appellant's grounds of appeal is that the evidence does not show the commission of the crime charged, therefore we must examine the evidence introduced at the trial, during which the appellant admitted that he was not a physician.

Witness Benito Recio testified that he is a detective and that in the month of June he called on the accused to ascertain whether he was selling the apparatus known as Oxydonor and asked to be appointed agent for the same. Acha replied that he had no objection but that Recio would have to buy five apparatuses in order to undertake the sales, on which he would allow him a commission; that in answer to questions of the witness the accused stated that the apparatus would cure all diseases including the bubonic plague and handed him some pamphlets regarding the use of the apparatus, but did not charge him anything for the information.

José Labrador's testimony refers only to the seizure by him as marshal of certain of the Oxydonor apparatuses.

Pedro Schira testified that he know of and used the Oxydonor, which he purchased because of an advertisement which he read in a newspaper; that having seen the advertisement he called on the accused who gave him a pamphlet from

which he learned the manner of applying the apparatus; that although he told Acha that he had a disease, the latter gave him no advice regarding the use of the apparatus, nor did he prescribe, direct, or recommend him to purchase it or make any charge except $25 for the apparatus.

Germán Díaz is a printer and Acha paid him for some advertisements of the Oxydonor.

José Aldea is the manager of the newspaper *El Heraldo Español* in which some advertisements of the Oxydonor were published by order of the accused.

Adalberto Díaz Mor purchased an Oxydonor apparatus from Acha and used it, but the accused gave him no instructions at the time of the sale except a prospectus; that owing to the good results given him by the apparatus he wrote a letter to the manufacturers and sent it to Acha.

Ildefonso Abudo saw an advertisement of the Oxydonor and ordered one from Acha paying him the catalogue price of $25, and as the apparatus cured him, from feelings of gratitude he wrote a letter voluntarily to the company for publication.

Everisto Freiría saw an advertisement of the Oxydonor and purchased one from Eduardo Acha.

Manuel Hernández says that he has a son who was sick for some time and as he was without means he asked Schira for assistance and Schira told him to go to Acha and ask for the loan of an apparatus, which would be found beneficial; that he did so and Acha agreed, but said that he himself could not leave his office; that the witness urged him to come with him and show him how to apply it, whereupon the accused went and applied the apparatus called Oxydonor; that four or five days later Acha returned and asked him how the child was progressing; that the witness made no payment to the accused, but from a sense of gratitude he wrote a letter to the company, which he handed to Acha, who

corrected some errors which it contained; that when Acha went to his house he gave him a catalogue.

The foregoing, together with some of the letters of recommendation and some published advertisements being the evidence introduced by the prosecution, we cannot regard the same as sufficient to warrant a conviction of the accused. The entire evidence taken together shows nothing more than that the appellant advertised and sold an apparatus known as Oxydonor, but not that he recommended, prescribed, or directed it for the use of any person or that he received directly or indirectly any bonus, gift, or compensation for prescribing the Oxydonor apparatus, and that he received only the catalogue price for the apparatus. It is true that he applied the apparatus in the case of the son of the witness Bermúdez, but even in this case he neither prescribed nor recommended it, this having been done by another person, nor did he charge anything for the apparatus or for its application which was made at the request of the said witness.

In a charge founded on the facts stated in the present case, after proving that the appellant was not a physician authorized to practise medicine in this Island—and it was admitted that he was not—it was necessary to prove besides two essential requisites, failing either of which the offense cannot be held to have been committed; namely, that the accused recommended, prescribed, or directed for the use of some person the apparatus Oxydonor for the cure, relief, or palliation of some ailment or disease of the mind or body, and, further, that he did so after having received, or with the intent of receiving, either directly or indirectly, some bonus, gift, or compensation.

The mere act which was proven of advertising and selling the Oxydonor does not constitute an offense according to said act, and under a statute similar to ours the Court of Special Sessions of the First Division of the City of New York in the case of *The People* v. *Dr. H. Sanche & Co., Inc.*

*1908,* held in September, 1909, that the advertising and selling of said apparatus Oxydonor constituted no offense under the act regulating the practice of medicine. . .

If, therefore, all the integral elements of the offense charged have not been proven, as we have shown, the accused cannot be held to have violated the act referred to and the other questions raised by the appellant need not be discussed.

The judgment appealed from should be reversed and the accused acquitted.

*Reversed.*

Chief Justice Hernández and Justices Wolf and del Toro concurred.

Mr. Justice MacLeary did not take part in the decision of this case.